UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RAYMOND R. MOURADIAN,
        Plaintiff,


        v.                                          CIVIL ACTION NO.
                                                    17-10091-PBS


U.S. GOVERNMENT; MEDICARE;
CMS; IRS and ITS EMPLOYEES;
JEFF SESSIONS, U.S. ATTORNEY
GENERAL; SELMA VERNA, DIRECTOR,
MEDICARE, CMS; and JOHN
KOSKINEN, COMMISSIONER
INTERNAL REVENUE SERVICE,
        Defendants.


**REPORT AND RECOMMENDATION RE:
DEFENDANTS' MOTION TO DISMISS (DOCKET ENTRY # 39);
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOCKET
ENTRY # 28); PLAINTIFF'S MOTION FOR A DECLARATORY
JUDGMENT (DOCKET ENTRY # 37); PLAINTIFF'S MOTION
FOR A DEFAULT JUDGMENT
(DOCKET ENTRY # 45)**

**August 30, 2018**


**BOWLER, U.S.M.J.**

Plaintiff Raymond R. Mouradian ("plaintiff") filed this
action asserting a denial of due process and equal protection
because defendants Medicare and/or the Centers for Medicare and
Medicaid Services ("CMS") sought reimbursement for certain costs
of his medical care resulting from an automobile accident.
(Docket Entry # 1).  When he refused to comply with one or more
reimbursement requests, the Bureau of the Fiscal Service of the

United States Department of the Treasury ("the Bureau of Fiscal
Service") informed him it would withhold 15% from his monthly
social security payments thus leading plaintiff to amend the
complaint to add the Internal Revenue Service ("IRS"), its
employees, and IRS Commissioner John Koskinen ("Koskinen") as
defendants.  (Docket Entry ## 15, 15-1, 15-2).

As set out in the amended complaint, plaintiff alleges that
defendants the United States government; Medicare; CMS; the IRS
and its employees; Jeff Sessions ("Sessions"), the attorney
general of the United States; Seema Verna ("Verna"),
administrator of the Centers for Medicare and Medicaid Services
("CMS");[1] and Koskinen violated the Due Process Clause of the

---

[1]  The amended complaint names "Selma Verna" as "Director,
Medicare, CMS."  (Docket Entry # 15).  This court takes judicial
notice that *Seema* Verna is the administrator of CMS.  Plaintiff
correctly served Seema Verna with a copy of the amended complaint
and summons.  (Docket Entry # 19).  To date, plaintiff
successfully served Sessions, Verna, and Koskinen with the
amended complaint and summonses.  (Docket Entry ## 16, 19, 20,
24, 27).  Counsel for these defendants also filed a notice of
appearance on behalf of defendant the United States government
(Docket Entry # 26) and, in filing the motion to dismiss, did not
argue that service of process was insufficient.  See Fed. R. Civ.
P. 12(h); 5C Charles Alan Wright et al. Federal Practice and
Procedure § 1391 (3d ed.) ("it now is settled that any time a
defendant makes a pre-answer Rule 12 motion, he or she must
include, on penalty of waiver, the defenses set forth in
subdivisions (2) through (5) of Rule 12(b)").  Accordingly,
Sessions, Verna, Koskinen, and the United States government
("defendants") comprise the defendants in this action at this
juncture.

Fourteenth Amendment,[2] denied him equal protection, and violated
the Fourth and Seventh Amendments by using threatening,
intimidating, and coercive means to collect the requested
payments from him. (Docket Entry # 15). The amended complaint
asserts that the manner in which CMS collected the medical
payments from plaintiff, i.e., without a warrant and without
notice and due process, was unconstitutional. (Docket Entry #
15, p. 2). As stated in the amended complaint, plaintiff paid
for uninsured motorist coverage under his insurance policy but
still had to pay Medicare for his own medical expenses even
though he was not at fault for the accident. (Docket Entry # 15,
p. 2). The amended complaint characterizes the statutory basis
under which defendants sought repayment, 42 U.S.C. § 1395y(b)(2)
("section 1395y(b)(2)"), as unconstitutional and that a jury must
determine the medical expenses and any repayment plaintiff is
obligated to make.[3] (Docket Entry # 15).

---

[2] Because plaintiff is proceeding pro se and the Due
Process Clause of the Fourteenth Amendment applies to states as
opposed to federal actors, this court construes this claim as
brought under the Due Process Clause of the Fifth Amendment.
In a pro se motion for a default judgment, plaintiff also quotes
the Due Process Clause of the Fifth Amendment as a basis for
finding "[t]he Medicare Law, Title 42 U.S.C. Section 1395y(6)(2)
[sic]" unconstitutional. (Docket Entry # 45).

[3] The above allegations target the circumstances of CMS'
collection efforts in plaintiff's particular case. Accordingly,
the amended complaint does not challenge a systemwide policy.
See Justiniano v. Social Security Administration, 876 F.3d 14,
25-26 (1st Cir. 2017).

Defendants move to dismiss the amended complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") because:  (1) the claims are moot in light of a repayment of the funds offset from plaintiff's social security benefit payments; (2) plaintiff failed to exhaust his administrative remedies under the Social Security Act, 42 U.S.C. § 405(g) ("section 405(g)"), which the Medicare Act incorporates under 42 U.S.C. § 1395ff(b) ("section 1395ff(b)"); and (3) the jurisdictional bases cited in the amended complaint, namely, 28 U.S.C. §§ 240(b), 671, and 1346(b), as well as the First Amendment, do not provide subject matter jurisdiction.  (Docket Entry ## 39, 40).  Defendants additionally seek a dismissal under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") because neither the Seventh Amendment nor the Fourteenth Amendment provide a basis for relief.  (Docket Entry ## 39, 40).

In seeking summary judgment and opposing the motion to dismiss, plaintiff argues that the Fourth Amendment requires a warrant from a judge to seize his social security payments and his income tax refund.  (Docket Entry ## 28, 54).  He asserts that section 1395y(b) does not afford due process or equal protection and is therefore unconstitutional.  (Docket Entry ## 28, 54).  In filing the summary judgment motion before defendants moved to dismiss the amended complaint and before the due date of an answer or responsive pleading, plaintiff further argues that

4

defendants fail to defend themselves by responding to the complaint under Fed. R. Civ. P. 8 or Rule 12.  (Docket Entry # 28).  Plaintiff raises similar arguments in a motion for a default judgment under Fed. R. Civ. P. 55 ("Rule 55").[4]  (Docket Entry # 45).  In addition to the foregoing motions (Docket Entry ## 28, 39, 45), a two-sentence motion for a declaratory judgment under 28 U.S.C. § 2201 is also pending before this court (Docket Entry # 37).

After conducting a hearing on May 8, 2018, this court took the motions (Docket Entry ## 28, 37, 39, 45) under advisement. It is appropriate to consider the issue of subject matter jurisdiction before adjudicating the other motions.  See Godin v. Schencks, 629 F.3d 79, 83 (1st Cir. 2010) ("court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting"); Bonano v. E. Caribbean Airline Corp., 365 F.3d 81, 83 (1st Cir. 2004).  Accordingly, this court turns to the motion to dismiss under Rule 12(b)(1).  (Docket Entry # 39).

I.   Motion to Dismiss

---

[4]  This court allowed an extension of time to answer the amended complaint up to December 2, 2017.  (Docket Entry # 32). Because December 2, 2017 is a Saturday, defendants had until Monday, December 4, 2017 to file an answer or responsive pleading.  See Fed. R. Civ. P. 6(a)(1)(C).  Filed on December 4, 2017, the answer is timely.  Accordingly, neither entry of a default under Rule 55(a) nor issuance of a default judgment under 55(b) is appropriate.

In reviewing a Rule 12(b)(1) motion, a court must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.  <u>Sanchez ex rel. D.R.-S. v. U.S.</u>, 671 F.3d 86, 92 (1st Cir. 2012) ("credit[ing] the plaintiff's well-pled factual allegations and draw[ing] all reasonable inferences in the plaintiff's favor" under Rule 12(b)(1)); <u>Merlonghi v. United States</u>, 620 F.3d 50, 54 (1st Cir. 2010) (citing <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358, 363 (1st Cir. 2001)).  Equivalent to a Rule 12(b)(6) standard, a motion to dismiss under Rule 12(b)(1) "is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." <u>Gordo-Gonzalez v. United States</u>, 873 F.3d 32, 35 (1st Cir. 2017).  "The district court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" <u>Merlonghi v. United States</u>, 620 F.3d at 54 (quoting <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st Cir. 1996)).  When a defendant challenges subject matter jurisdiction, the plaintiff bears the burden of proving jurisdiction.  <u>Johansen v. United States</u>, 506 F.3d 65, 68 (1st Cir. 2007).  "The part[ies] raising a mootness defense," i.e., defendants in the case at bar, however, have "the burden of establishing the facts necessary to sustain that defense." <u>Ramirez v. Sanchez Ramos</u>, 438 F.3d 92, 100 (1st Cir. 2006).  To succeed, defendants "must show that,

after the case's commencement, intervening events have blotted
out the alleged injury and established that the conduct
complained of cannot reasonably be expected to recur."  Id.

Prior to recounting the facts, an understanding of the
statutory framework under which Medicare operates as a secondary
payer of health insurance for injuries sustained in an automobile
accident is helpful.  Section 1395y(b)(2) of the Medicare
Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y, "designates
Medicare as a 'secondary payer' of medical benefits, and" thereby
"precludes the program from providing such benefits when a
'primary plan' could be expected to pay."  Taransky v. Secretary
of United States Dept. of Health and Human Services, 760 F.3d
307, 310 (3rd Cir. 2014) (quoting section 1395y(b)(2)(A)).  A
"primary plan" encompasses "an automobile or liability insurance
policy or plan."  42 U.S.C. § 1395y(b)(2)(A); see also United
States v. Rhode Island Insurers' Insolvency Fund, 80 F.3d 616,
621 n.3 (1st Cir. 1996).  When the primary plan "has not made or
cannot reasonably be expected to make a payment . . . promptly"
of a Medicare "beneficiary's medical expenses, however, Medicare
makes conditional payments to ensure that the beneficiary
receives timely care."  Taransky v. Secretary of United States
Dept. of Health and Human Services, 760 F.3d at 310 (emphasis
added); 42 U.S.C. § 1395y(b)(2)(B)(i).  The United States is then
subrogated for these conditional payments made to the Medicare

7

beneficiary.  See 42 U.S.C. § 1395y(b)(2)(B)(iv).

Notably, the MSP Act, as amended in 2003, mandates that, "A primary plan, and an entity that receives payment from a primary plan, shall reimburse" Medicare for such conditional payments in the event the "primary plan has or reasonably had a responsibility to make payment with respect to" the medical services at issue.  42 U.S.C. § 1395y(b)(2)(B)(ii).  "A primary payer's responsibility for payment may be demonstrated by" a settlement.  42 C.F.R. § 411.22(b)(3).  In accordance with the statute's enabling regulations, CMS may seek recovery of its payments from a Medicare beneficiary who received a payment from the primary plan.  See 42 C.F.R. § 411.24(g) ("CMS has a right of action to recover its payments from any entity, including a beneficiary, provider, . . . or private insurer that has received a primary payment"); Haro v. Sebelius, 747 F.3d 1099, 1115 (9th Cir. 2014) (Secretary of Health and Human Services interprets undefined term "entity" to include Medicare beneficiary's attorney who receives settlement proceeds for beneficiary); see also Stalley v. Catholic Health Initiatives, 509 F.3d 517, 524 (8th Cir. 2007) ("government can also sue anyone that received payment from the primary payer with respect to expenses covered under Medicare, including the beneficiary himself, should he collect the payment but fail to reimburse the government").  In the event the Medicare beneficiary receives such a payment, he

"must reimburse Medicare within 60 days."  42 C.F.R. § 411.24(h).

FACTUAL BACKGROUND

On June 6, 2015, plaintiff sustained serious injuries in an automobile accident caused by a motorist in Bridgewater, Massachusetts.  (Docket Entry # 1-6, pp. 1, 7-8) (Docket Entry # 41-4, pp. 3, 8-9).[5]  Plaintiff, who served in the Navy from 1955 to 1989, suffered a "femur fracture [and] broken ribs" when an oncoming vehicle crossed the center line of a two-lane road at a high rate of speed and crashed directly into the vehicle plaintiff was driving.  (Docket Entry # 15) (Docket Entry # 1-6, pp. 2, 7) (Docket Entry # 41-4, pp. 4, 8).  A patrol officer of the Bridgewater Police Department charged the operator with misdemeanor offenses, including marked lanes violations, negligent operation of a motor vehicle, possession of an open container of alcohol in a motor vehicle, and speeding.  (Docket Entry # 1-6, pp. 4-5) (Docket Entry # 41-4, pp. 5-6).  A police report reflects that the operator had a bag of marijuana and a pipe in his lap, an open container of alcohol within his reach, and 29, nip-sized bottles of alcohol in the vehicle.  (Docket Entry # 1-6, pp. 2, 7-8) (Docket Entry # 41-4, pp. 4, 8-9).  Plaintiff was not at fault because he "had no way of avoiding the collision."  (Docket Entry # 1-6, p. 2) (Docket Entry # 41-4, p. 4).

---

[5]  Page numbers refer to the docketed page number.

Medicare began making a number of conditional payments for medical services provided to plaintiff beginning with services on the date of the accident.  (Docket Entry # 41, p. 5) (Docket Entry # 41-2, p. 6).  By letter dated August 22, 2016, CMS notified plaintiff that Medicare identified conditional payments in the amount of $38,152.36 and attached a list of each conditional payment up to August 22, 2016.  (Docket Entry # 41). The letter explained that the list was "not final" because CMS was "still investigating" and instructed plaintiff not to send any money to Medicare until "submission of settlement information and receipt of a demand/recovery calculation letter from our office" in order to avoid underpayments or overpayments.  (Docket Entry # 41, p. 2).  The letter notified plaintiff of "Medicare's priority right of recovery as defined under the Medicare Secondary Payer provisions" and that the "conditional payments are subject to reimbursement to Medicare from proceeds you may receive pursuant to a settlement, judgment, award, or other payment."  (Docket Entry # 41, p. 1).

The following day on August 23, 2016, plaintiff's attorney faxed the CMS Benefits Coordination and Recovery Center ("BCRC") a "Proof of Representation" signed by plaintiff acknowledging the attorney's representation of plaintiff and an unsigned "acknowledgment of settlement" in the amount of $25,000 in connection with "a bodily injury claim resulting from" the June

10

6, 2015 motor vehicle accident.  (Docket Entry # 41-1) (Docket Entry # 41, p. 4) (providing BCRC's fax number).[6]  The cover letter stated that plaintiff's "claim has been settled."  (Docket Entry # 41-1, p. 1).  A week later on September 1, 2016, CMS sent plaintiff a letter that reads, having "learned that you have received a settlement," CMS and/or BCRC "determined that you are required to repay the Medicare program $25,000.00 for the cost of medical care it paid relating to your case."  (Docket Entry # 41-2, pp. 1, 5).  The letter enclosed an updated list of conditional payments Medicare made as of September 1, 2016 totaling $29,422.04.[7]  (Docket Entry # 41-2, p. 9).

The letter explains that plaintiff is:

> required to repay Medicare because Medicare paid for medical care you received related to the recovery of your case.  The Medicare Secondary Payer (MSP) law allows Medicare to pay conditionally for medical care received by a Medicare beneficiary who has or may have a case.  However, the law also requires Medicare to recover those payments if payment of a settlement, judgment, award, or other payment has been or could be made.

(Docket Entry # 41-2, p. 2).  The letter directed plaintiff to the statute, 42 U.S.C. § 1395y(b)(2), and the applicable regulation, 42 C.F.R. § 411.20, for further guidance.  (Docket

---

[6]  The cover letter denotes the same fax number.  (Docket Entry # 41-1, p.1).

[7]  The reduction in the amount of the conditional payments from the previous $38,152.36 figure is not material because a beneficiary is liable only for the amount he received, 42 C.M.R. § 411.24(g), (h), which CMS believed was $25,000 at that point in time.

Entry # 41-2, p. 2).  The letter also informed plaintiff that, if he did not submit a repayment of $25,000 in full within 60 days (October 30, 2016), he will incur interest on any remaining balance at a rate of 9.625%.  (Docket Entry # 41-2, p. 4).

The letter included specific information advising plaintiff about the ability to request a waiver and "the right to appeal" the determination.  (Docket Entry # 41-2, pp. 3-4).  The letter explicitly noted that plaintiff's "right to request a waiver is separate from your right to appeal our determination, and you may request both a waiver and an appeal at the same time."  (Docket Entry # 41-2, p. 3).  As to the right to file an appeal, the letter stated that:

> To file an appeal, you should send us a letter explaining why you disagree with our determination that you owe money to Medicare and/or why you believe our calculation of the amount you owe is incorrect . . . Once we receive your request, we will decide whether our determination that you must repay Medicare $25,000.00 is correct and send you a letter that explains the reasons for our decision.  Our letter will also explain the steps you will need to follow to appeal that decision if it is less than fully favorable to you.
>
> You have 120 days from receipt of this letter September 1, 2016 to file an appeal.

(Docket Entry # 41-2, p. 4).

Instead of filing an appeal with CMS, plaintiff decided to seek a waiver of the $25,000 repayment.  In response to his request to waive the entire amount, CMS allowed a partial waiver in the amount of $12,500.  (Docket Entry # 41-5).  In particular,

by letter dated October 20, 2016, CMS and/or BCRC informed
plaintiff that:

> It is our determination to partially waive Medicare's
> recovery claim in the amount of $12,500.00 on the principal
> portion of the debt.  We have recalculated the amount owed
> on this debt.  In doing this recalculation, we eliminated
> any interest charges associated with the part of the
> recovery demand amount that is being waived.
>
> The amount due through October 17, 2016 is $12,500.00.  The
> principal amount is $12,500.00 and the interest amount is
> $0.00 . . . If this debt remains outstanding as of October
> 31, 2016, the amount due, including interest, will be
> $12,700.52.  Please be advised that interest will continue
> accruing every 30 days until the balance is paid in full.

(Docket Entry # 41-5, p. 1).  Referring to the prior, September

1, 2016 "recovery demand letter," the October 20, 2016 letter

reiterates that the former letter:

> provided notice that repayment of the debt would not affect
> your right to appeal (dispute) the debt or to request a
> waiver of recovery of the debt.  That letter also provided
> notice that interest would be assessed on any debt not
> repaid in full within 60 days of that date, regardless of
> whether an appeal or waiver of recovery was requested . . .
>
> By law, delinquent debts are required to be referred to the
> Department of Treasury for further collection action.  If
> the BCRC does not receive repayment in full within 15 days
> of the date of this letter, we will either send a separate
> notice titled "Notice of Intent to Refer Debt" that explains
> the referral process or if you have already received this
> letter, we will proceed with the referral to the Department
> of Treasury.

(Docket Entry # 41-5, p. 2).  The October 20, 2016 letter also

informed plaintiff about the ability to file an appeal of the

decision not to grant an entire waiver and the applicable time

period to file an appeal.  (Docket Entry # 41-5, p. 2).

By letter dated December 6, 2016, CMS and/or BCRC sent plaintiff a "Notice of Intent to Refer [the] debt to [the] Department of Treasury."  (Docket Entry # 41-6) (capitalization and emphasis omitted).  The letter advised plaintiff that he owed $12,800.78, including interest, as of November 30, 2016.  It also explained CMS' authority under the Debt Collection Improvement Act of 1996 ("DCIA"), see 31 U.S.C. §§ 3711, 3716, and 3720A, to refer the debt "to the Department of Treasury and/or a designated Debt Collection Center for collection" and the ability to offset payments made by other federal agencies to collect the debt. (Docket Entry # 41-6, pp. 1-2).  As stated in the letter, such DCIA offsets include those from federal income tax refunds and payments of "Social Security retirement or disability benefits." (Docket Entry # 41-6, pp. 1-2).  The letter also identified the possibility of an appeal option "by the appeal deadline." (Docket Entry # 41-6, p. 3).

In a December 12, 2016 letter, plaintiff objected to the aforementioned partial waiver, i.e., "the current demand from CMS (Medicare) for [$]12,700 plus interest."  (Docket Entry # 41-7). The letter also recounted a prior lawsuit plaintiff filed in this district, which the amended complaint also describes.  (Docket Entry # 15, p. 2) (Docket Entry # 41-7, p. 1).  In that action, the district court initially allowed the defendants' summary judgment, which the First Circuit vacated on appeal.  See

14

Mouradian v. John Hancock Companies, 751 F. Supp. 262 (D. Mass. 1988), vacated, 1989 WL 225052 (1st Cir. May 26, 1989) (No. 88-2072).  On remand, the district court again allowed a summary judgment motion filed by the defendants and the First Circuit affirmed the decision.  See Mouradian v. John Hancock Companies, 751 F. Supp. 272 (D. Mass. 1990), aff'd, 930 F.2d 972 (1st Cir. 1991).

The December 12, 2016 letter stated, "There will be no settlement" and, "[t]o date, I have not received a cent from my insurance company."  (Docket Entry # 41-17, p. 1) (emphasis omitted).  CMS and/or BCRA therefore sent plaintiff a letter dated January 13, 2017 requesting additional information to support plaintiff's assertion that "the settlement proceeds have not been disbursed to date."  (Docket Entry # 1-7).  The letter further stated that the outstanding debt as of January 9, 2016, with interest, totaled $13,001.30, and "will continue to accrue" at the 9.625% rate.  (Docket Entry # 1-7).

By letter dated March 23, 2017, the Bureau of Fiscal Service informed plaintiff that it withheld $406 from his IRS tax refund.  (Docket Entry # 15-1, p. 2).  In an April 3, 2017 letter, the bureau notified plaintiff that 15% of his monthly Social Security benefit payment will be withheld "beginning no sooner than" June 2017 to collect the debt.  (Docket Entry # 15-1, p. 1).

Meanwhile, plaintiff filed this action on January 20, 2017.

During an October 3, 2017 status conference, plaintiff again indicated he had not received any settlement funds.  As a result, defendants' counsel at the hearing indicated she would review the matter.  In November 2017, BCRC issued a refund check to plaintiff in the amount of $1,331.50.  (Docket Entry # 63).  At the May 8, 2018 hearing on the pending motions, plaintiff acknowledged his receipt of the check and that he had been made whole for the money defendants took.

In a supporting memorandum, defendants' counsel represents that CMS "recalled the debt from the Department of the Treasury" in late October 2017 and thereafter refunded the amount of $1,331.50, which constitutes the entire amount the United States Department of the Treasury ("Department of the Treasury") previously offset.  (Docket Entry # 40, p. 10).[8]  Plaintiff did not dispute these representations in the opposition to summary judgment.

DISCUSSION

As previously noted, defendants seek to dismiss this action on a number of grounds, including mootness and lack of administrative exhaustion.  (Docket Entry # 40).

A.   Mootness

---

[8]  Because defendants' supporting memorandum provides the source for the above "fact," defendants' counsel is instructed to provide the information in an affidavit within seven days of the date of this Report and Recommendation.

"To assess whether a claim is moot," the initial first step is to "determine what the claimant seeks." Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46, 53 (1st Cir. 2015). Here, the amended complaint seeks monetary relief in the amount of "$100,000 for injuries, pain and suffering and anguish caused" by defendants since June 6, 2015, which is the date of the accident and the first date of service for which CMS made a conditional payment. (Docket Entry # 15) (Docket Entry # 40, p. 15). The amended complaint additionally includes damages for the amount of insurance plaintiff paid. (Docket Entry # 15). It further seeks a declaration that section 1395y(b) of the MSP Act authorizing "collection by committee" is unconstitutional.[9] (Docket Entry # 15, pp. 1-2).

"The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013). Indeed, this court "is duty bound to dismiss" a "claim as moot if subsequent events unfold in

---

[9]   The amended complaint also alleges that "[t]he statutes cited by the IRS" (Docket Entry # 15, p. 3), presumably the offset provisions of "the Debt Collection Improvement Act of 1996" (Docket Entry # 15-1, p. 3), "are . . . unconstitutional" (Docket Entry # 15, p. 3). Separately, the two-sentence motion for a declaratory judgment also seeks declaratory relief, albeit it does not articulate the nature of the declaration. (Docket Entry # 37).

a manner that undermines any one of the three pillars on which constitutional standing rests:  injury in fact, causation, and redressability." Ramirez v. Sanchez Ramos, 438 F.3d at 100.

In the case at bar, CMS recalled the debt from the Department of the Treasury in late October 2017.  CMS then issued plaintiff a refund check in November 2017 for the funds the Department of the Treasury had previously offset.[10]  (Docket Entry # 63).  Plaintiff acknowledges that he received these funds.  The return of these previously offset funds therefore moots this action as to any *monetary* relief for the amount the Bureau of Fiscal Service withheld from plaintiff's tax refund or Social Security benefit payments.  However, it does not moot any remaining monetary claim or the requested declaration that section 1395y(b) and the DCIA offset provisions used to collect the CMS debt are unconstitutional.  See New Hampshire Motor Transportation Association v. Rowe, 448 F.3d 66, 73 (1st Cir. 2006) (party raising mootness "must show that the court cannot grant any 'effectual relief whatever'").

B.  Lack of Administration Exhaustion

Defendants next argue that this court lacks subject matter

---

[10] As explained previously, CMS may recover conditional payments from a beneficiary or a beneficiary's attorney who receives a primary payment in the form of settlement funds.  See 42 C.F.R. §§ 411.22(b)(3), 411.24(g)-(h); Haro v. Sebelius, 747 F.3d at 1115; Stalley v. Catholic Health Initiatives, 509 F.3d at 524.

jurisdiction due to plaintiff's failure to exhaust his administrative remedies.  Defendants maintain that plaintiff's claims arise under the MSP Act, which authorizes judicial review only after he presents his claims to the agency (CMS) and exhausts his administrative remedies.  (Docket Entry # 40).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is an appropriate vehicle to challenge a failure to exhaust administrative remedies under the MSP Act.  See United States v. Lahey, 399 F.3d 1, 8 n.6 (1st Cir. 2005).  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Medicare Act incorporates the judicial review provisions of section 405(g).[11]  See Parkview Adventist Med. Center v. United States on behalf of Dep't of Health & Human Services, 842 F.3d 757, 759 n.2 (1st Cir. 2016) ("[s]ection 405(g) is made applicable to the Medicare statute via 42 U.S.C. § 1395ff(b)(1)(A)").  Likewise, the Medicare Act incorporates the jurisdictional restrictions in 42 U.S.C. § 405(h) ("section 405(h)").  Id. at 759 n.3 ("[s]ection 405(h) is made applicable to the Medicare statute via 42 U.S.C. § 1395ii").  Under section 405(h), "neither federal question nor federal defendant jurisdiction is available for suits 'to recover on any claim arising under' the Act."  Puerto Rican Association of Physical Medicine and Rehabilitation, Inc. v. United States, 521

---

[11]  The Medicare Act, codified in Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq., includes the MSP Act, 42 U.S.C. § 1395y.

F.3d 46, 48 (1st Cir. 2008) (quoting section 405(h) with emphasis added).  Section 405(h) thus expressly excludes 28 U.S.C. § 1346(b) as a basis for jurisdiction for any claim arising under the MSP Act.  42 U.S.C. §§ 405(h), 1395ii.

The Supreme Court broadly interprets "the section 405(h) bar" such that "a claim 'arises under' the Social Security or Medicare Act if 'the standing and the substantive basis' for the claim derive from that statute."  Id. (citations omitted).  For example, the constitutional challenge to a Medicare regulation in the Puerto Rican Association case as well as the due process challenge to a termination of benefits without adequate notice in the Justiniano case nevertheless arose under the Medicare and Social Security Acts.  See Justiniano v. Social Security Administration, 876 F.3d at 22-23; Puerto Rican Association of Physical Medicine and Rehabilitation, Inc. v. United States, 521 F.3d at 48-49.  As recently explained by the First Circuit in the Justiniano, two Supreme Court decisions[12] "make clear that the fact that the plaintiffs have a constitutional basis for their claims does not change the fact that those claims 'arise under' the Act."  876 F.3d at 22.

Plaintiff's substantive claims seek to preclude the application of the repayment provisions of the MSP Act to him

_____

[12]   Weinberger v. Salfi, 422 U.S. 749 (1975); Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000).

because of the unconstitutional manner (without notice, a warrant
from a judge, or coercion with the threatened imposition of an
exorbitant interest rate) in which CMS sought collection,
including the use of a DCIA offset.  (Docket Entry # 15).
Plaintiff's interest in avoiding collection of the repayment
under section 1395y(b)(2) and declaring the statute
unconstitutional arises under the MSP Act, which provides the
substantive basis for the purportedly unconstitutional collection
and the standing for the claims.  See Taransky v. Secretary of
the Dept. of Health and Human Services, 760 F.3d at 309, 321
(Medicare beneficiary's due process claim that she was not
required to reimburse Secretary of the Department of Health and
Human Services for conditional medical expenses advanced on her
behalf "'arises under' the MSP Act"); Haro v. Sebelius, 747 F.3d
1099, 1111 (9th Cir. 2014); see also Justiniano v. Social
Security Administration, 876 F.3d at 22 ("[w]hat matters is that
those claims are predicated on—and thus "arise under"—the
plaintiffs' interest in obtaining the benefits to which they
contend they are entitled under the Act").

   "Judicial review of claims *arising under* the Medicare Act"
or, more specifically, the MSP Act, "is available only after the
Secretary renders a 'final decision' on the claim, in the same
manner as is provided in 42 U.S.C. § 405(g) for old age and
disability claims arising under Title II of the Social Security

Act." Heckler v. Ringer, 466 U.S. 602, 605 (1984) (emphasis added); see 42 U.S.C. § 1395ff(b)(1)(A). A final decision enures "on a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." Id. at 606. Hence, sections 405(g) and 1395ff(b)(1)(A) "allow for judicial review once a specified agency appeals process is completed." Puerto Rican Association of Physical Medicine and Rehabilitation, Inc. v. United States, 521 F.3d at 48. Plaintiff did not file an administrative appeal asserting that section 1395y(b)(2) is unconstitutional. He also did not file an administrative appeal that CMS' method to collect repayment of the conditional payments through an offset of his social security benefits or IRS refund under the DCIA was unconstitutional. Finally, he did not appeal CMS' decisions attempting to seek reimbursement from him of the medical expenses CMS paid for the June 6, 2015 accident.

It is true that circumstances, such as irreparable harm regarding a colorable claim and the collateral nature of a constitutional claim to the substantive entitlement to benefits, may provide a basis for a court to waive exhaustion. See Justiniano v. Social Security Administration, 876 F.3d at 24-25. In the case at bar, however, channeling the claims through the agency does not result in irreparable harm in the form of a complete preclusion of review. See Puerto Rican Association of

22

<u>Physical Medicine and Rehabilitation, Inc. v. United States</u>, 521
F.3d at 49.  Plaintiff had the opportunity to obtain
administrative review of the constitutional claims regarding
section 1395y(b)(2) and the collection method CMS employed under
the DCIA by including such claims in an appeal to CMS.  CMS
explained the options regarding the filing of an appeal in the
September and October 2016 letters as well as in the December
2016 letter notifying plaintiff about the collection method of a
CMS referral of the debt to the Department of Treasury under the
DCIA.  (Docket Entry # 41-2, p. 4) (Docket Entry # 41-5, p. 2)
(Docket Entry # 41-6, pp. 1-3).  Where, as here, the claims arise
under the MSP Act, plaintiff cannot ignore the available
administrative remedies of filing an appeal with CMS and then
proceed directly to federal court.  <u>See</u> <u>Taransky v. Secretary of</u>
<u>the Dept. of Health and Human Services</u>, 760 F.3d at 321 n.13
("'no review at all'" exception "does not apply here because
administrative review of Taransky's due process claim was
available under" section 405(g)).  Thus, even reasonably assuming
a collateral claim, <u>see</u> <u>Justiano</u>, 876 F.3d at 27 (finding
entirely collateral claims because "a win for the plaintiffs in
federal court would not necessarily entitle them to benefits" but
would "provide them with only the process for having determined
their eligibility for benefits"); <u>cf.</u> <u>Taransky</u>, 760 F.3d at 321
n.14 (constitutional due process claim was not collateral because

it "is almost identical to her substantive argument"),
irreparable harm is lacking.

In addition, plaintiff's constitutional challenges to his
circumstances are not challenges to a systemwide policy.[13]  See
Justiniano v. Social Security Administration, 876 F.3d at 25-26.
"[G]uided by the policies underlying the exhaustion requirement,"
countenancing the route taken by plaintiff of proceeding directly
to federal court without even attempting to file an appeal
"'would weaken the agency by flouting its processes.'"  Id. at
25-26.  There is also no reason to believe that CMS would have "a
'closed mind' on the matter."  Id. at 26.  These and other
considerations counsel against allowing a waiver of the
administrative exhaustion requirement.

In short, section 405(h) "mandates the '"channeling" of
virtually all legal attacks through the agency.'"  Puerto Rican
Association of Physical Medicine and Rehabilitation, Inc. v.
United States, 521 F.3d at 48 (quoting Illinois Council, 529 U.S.
at 13).  This case is no exception.  Plaintiff's failure to
present the constitutional claims arising under the MSP Act to
CMS and thereafter exhaust his available administrative remedies
leads to a lack of subject matter jurisdiction.  See Trostle v.
Centers for Medicare and Medicaid Services, 709 F. App'x 736, 740
(3d Cir. 2017) ("Trostle had available to him the administrative

---

[13]  See footnote three and related text.

review process to challenge the actions of CMS, but chose not to pursue those remedies" resulting in lack of subject matter jurisdiction) (unpublished); Wilson ex rel. Estate of Wilson v. United States, 405 F.3d 1002, 1013 (Fed. Cir. 2005) (affirming dismissal of estate's claim challenging repayment of conditional medical expenses of decedent from settlement proceeds received by estate for failure to exhaust available administrative remedies); Fanning v. United States, 346 F.3d 386 (3d Cir. 2003); Penoyer v. United States, No. 03-CV-115, 2004 WL 437461, at *1, *4-5 (N.D.N.Y. Feb. 3, 2004) (dismissing MSP Act claim for lack of subject matter jurisdiction due to failure to fully exhaust administrative remedies); see also Weinberger v. Salfi, 422 U.S. at 766 (noting that "'final decision' is a statutorily specified jurisdictional prerequisite . . . and may not be dispensed with merely by a judicial conclusion of futility such as that made by the District Court here").  While plaintiff undeniably suffered significant physical injuries in the June 2015 automobile accident through no fault of his own and paid insurance premiums for no-fault coverage, he cannot circumvent the MSP Act's administrative appeal process.

Finally, plaintiff's reliance on the Declaratory Judgment Act, 28 U.S.C. § 2201, is misplaced because it "does not provide an independent ground for jurisdiction." Centro Radiologico Rolon, Inc. v. United States, Civil No. 12-2051 (JAF), 2014 WL

556452, at *3 (D.P.R. Feb. 13, 2014) (rejecting Declaratory Judgment Act as providing jurisdiction to hear Medicare claim and discussing section 405(g) as the sole avenue for judicial relief).  The amended complaint's reliance on 28 U.S.C. §§ 240(b) and 671 to provide subject matter jurisdiction is misplaced.  The latter statute empowers the Supreme Court to appoint a Clerk, who in turn may appoint assistants.  28 U.S.C. § 671.  The former statute does not exist in the current United States Code. Section 405(h) excludes 28 U.S.C. § 1346(b), also cited in the amended complaint, as a basis for subject matter jurisdiction. The First Amendment's right to petition the government does not provide a basis to exercise subject matter jurisdiction.  See Tucker v. Sebelius, Civil No. 12-5900 RBK/AMD, 2013 WL 6054552, at *5, *8 (D.N.J. Nov. 15, 2013) (rejecting multitude of "alternative bases of federal jurisdiction" and explaining that "[c]onstitutional claims arising out of Medicare claims must . . . be 'channeled' through the procedure described in § 405(g)").[14] Even when "a claim 'arises under' both the Constitution and the Social Security Act, § 405(h) 'precludes resort to federal-question jurisdiction for the adjudication of constitutional contentions.'"  Id. at *8 (quoting Weinberger v. Salfi, 422 U.S. at 761) (ellipses omitted).

---

[14]  The same reasoning forecloses plaintiff's reliance on the Seventh Amendment as providing subject matter jurisdiction. (Docket Entry # 45, p. 2).

Because this court lacks subject matter jurisdiction, defendants' argument regarding the plausibility of the claims under Rule 12(b)(6) is not addressed.  See Godin v. Schencks, 629 F.3d at 83 (court has obligation "to proceed no further if [subject matter] jurisdiction is wanting").  Similarly, this court lacks subject matter jurisdiction to address the merits of plaintiff's summary judgment argument that the Fourth Amendment requires a warrant from a judge to seize his social security payments and his income tax refund or that the manner in which CMS sought reimbursement did not afford him due process or equal protection.  (Docket Entry # 28).

<u>CONCLUSION</u>

In accordance with the foregoing discussion, this court **RECOMMENDS**[15] that defendants' motion to dismiss (Docket Entry # 39) be **ALLOWED,** subject to defendants providing a suitable affidavit in seven days,[16] and that plaintiff's motion for summary judgment (Docket Entry # 28), motion for a declaratory judgment (Docket Entry # 37), and motion for a default judgment

---

[15] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection should be included.  See Fed. R. Civ. P. 72(b).  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.

[16] See footnote eight.

(Docket Entry # 45) be **DENIED.**

                                       /s/ Marianne B. Bowler
                                  **MARIANNE B. BOWLER**
                                  United States Magistrate Judge